UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ANDRE STARKS, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 1:13-cv-01530-TWP-DKL |
| CAROLYN W. COLVIN Commissioner of the Social Security Administration, | ) ) ) ) ) |
| Defendant. | ) |

## ENTRY ON JUDICIAL REVIEW

Plaintiff Andre Starks ("Mr. Starks") requests judicial review of the final decision of the Commissioner of the Social Security Administration ("the Commissioner") denying his application for Social Security Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act"), and for Supplemental Security Income ("SSI") under Title XVI of the Act.[1] For the reasons set forth below, the Court **AFFIRMS** the Commissioner's decision.

## I. BACKGROUND

### A. Procedural History

On October 5, 2010, Mr. Starks filed an application for DIB, and on October 12, 2010, he filed an application for SSI. He alleges a disability onset date of April 1, 2005. Mr. Starks' claims were denied initially on December 17, 2010, and upon reconsideration April 25, 2011. Thereafter, Mr. Starks filed a written request for a hearing, which was held on January 6, 2012, before Administrative Law Judge Glenn G. Myers ("the ALJ"). Mr. Starks was represented by attorney

---

[1] In general, the legal standards applied are the same regardless of whether a claimant seeks Disability Insurance Benefits or Supplemental Security Income. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations of statutes or regulations found in quoted decisions.

Randi L. Black at the hearing. Also appearing at the hearing was Patricia B. Ayerza, an impartial vocational expert. On February 3, 2012, the ALJ issued a decision denying Mr. Starks benefits. On July 3, 2013, the Appeals Council denied Mr. Starks' request for a review of the ALJ's decision, thereby making the ALJ's decision the final decision of the Commissioner for purposes of judicial review. Mr. Starks filed this civil action, pursuant to 42 U.S.C. § 405(g), for review of the ALJ's decision.

**B.     Factual Background**

Mr. Starks was thirty-four (34) years old at the time of his alleged onset date of April 1, 2005. He has a high school education, and past relevant work experience as an elder caregiver, a fish farm laborer, and a farm worker. Mr. Starks alleges disability due to post traumatic stress disorder ("PTSD"), back problems, depression, nerve damage, and other mental health issues. However, his appeal is based only upon the ALJ's assessment of his mental health issues and left arm pain that is secondary to his back problems.

**1.     Mental conditions**

Mr. Starks had a psychological evaluation on September 13, 2010 with Dr. Phyllis Sanchez, Ph.D ("Dr. Sanchez"). Dr. Sanchez noted six symptoms associated with a functional mental disorder, including marked anger, moderate poor sleep, marked paranoia, mild isolation, moderate to marked anxiety and moderate nightmares. Dr. Sanchez also diagnosed Mr. Starks with marked adult onset PTSD; marked teen onset explosive anger; and alcohol, cocaine and marijuana dependence in remission since July 2010. With regard to Mr. Starks' functional limitations, Dr. Sanchez noted that he has mild difficulties learning new tasks and with the ability to care for himself, including personal hygiene and appearance; moderate limitations in his ability to perform routine tasks; marked limitations in his ability to exercise judgment and make decisions, the ability

to relate appropriately to co-workers and supervisors and to interact appropriately in public contacts; and marked limitations in his ability to respond appropriately to and tolerate the pressures and expectations of a normal work setting, and to maintain appropriate behavior in a work setting. Dr. Sanchez determined that Mr. Starks is chronically mentally ill.

On September 29, 2010, Mr. Starks was seen for his anxiety by Dr. Sarah Rogers, M.D. ("Dr. Rogers"). Dr. Rogers noted that Mr. Starks had a constricted affect, and was anxious and paranoid. She started Mr. Starks on a trial of Seroquel because she believed he may have had an underlying diagnosis of schizoaffective disorder. Dr. Rogers saw Mr. Starks at a follow up visit on November 4, 2010. He reported being anxious, fearful, paranoid and having obsessive thoughts. He also gets irritable and angry, and has difficulty in crowds or around loud sounds. Dr. Rogers concluded that he suffers more from PTSD and depression than a schizoaffective disorder, and decided to discontinue the Seroquel. In a letter to the Social Security Administration ("SSA") dated October 18, 2011, Dr. Rogers stated that she believed he ultimately could rehabilitate and go back to work with appropriate treatment.

Mr. Starks attended a therapy session on January 11, 2011, with licensed social worker Charles Herndon. Mr. Herndon noted that Mr. Starks has almost 100% of the symptoms of PTSD listed in the Diagnostic and Statistical Manual. He was given the diagnoses of depression, anxiety, and PTSD. At a February 2, 2011 session, Mr. Herndon noted that Mr. Starks had a positive response to Celexa, which Mr. Starks associated with having a "good day" that day, meaning that he was non-vigilant and able to converse without usual reservations.

On March 17, 2011, Mr. Starks attended a psychological diagnostic evaluation by social security psychologist Dr. Wayne C. Dees, Psy.D. ("Dr. Dees"). Dr. Dees noted that Mr. Starks had been seeing a mental health provider every two weeks for the past six months. Mr. Starks

3

reported frequently changing moods, feeling sad most of the day, low motivation, impaired attention and concentration, and poor self-esteem. He also reported lacking sufficient energy to perform activities of daily living and self-care on a consistent basis. Mr. Starks reported that he does not socialize with others, does not belong to any groups or clubs, does not attend church, and has no hobbies or interests. He is able to cook simple meals, shops independently, and is able to manage his own finances.

On August 3, 2011, Dr. James Czysz, Psy.D. ("Dr. Czysz") completed a psychological evaluation to access Mr. Starks' mental impairments. Dr. Czysz noted that Mr. Starks presented as a gruff, paranoid, and generally angry man who was initially edgy and guarded in the session, and later became tearful when asked about past trauma. Dr. Czysz noted marked paranoia; moderate explosive anger; marked depressed mood; and marked anxiety, hypervigilance, exaggerated startle response, and general mistrust. The doctor diagnosed him with PTSD, depression, personality disorder with antisocial features, and gave him a global assessment of functioning score of 35. However, Dr. Czysz also noted that Mr. Starks would benefit from mental health treatment and vocational assistance, which would likely restore or substantially improve his ability to work for pay in a regular and predictable manner.

On December 20, 2011, Dr. Rogers completed a Medical Source Statement of Ability to do Work-Related Activities. She noted that Mr. Starks has slight difficulties with understanding, remembering, and carrying out short, simple instructions. He also had marked difficulties in understanding, remembering and carrying out detailed instructions as well as the ability to make judgments on simple work-related decisions. Dr. Rogers also noted that Mr. Starks had difficulties with the ability to interact appropriately with co-workers and to respond appropriately to change

in a routine work setting, as well as difficulties with the ability to interact appropriately with the public and supervisors.

### 2. Physical impairments

Mr. Starks complains of left arm pain which radiates up and down his arm and is affected by movement of his neck. Dr. Rogers noted that he had a 3/5 grip strength on the left side and weakness of finger abduction of the fourth and fifth digits. A spinal x-ray taken on October 7, 2010, showed wedging of C5 and C6, suggesting prior trauma. Mr. Starks also had degenerative disc disease from C4 to C7, with hypertrophic spurring of the uncovertebral joints bilaterally at C5-C6 and C6-C7. He also had bilateral facet disease from C4 to T1.

During an examination with Dr. Dees on March 17, 2011, Mr. Starks claimed that he had difficulty walking and standing for more than 15 to 20 minutes and sitting for more than 30 minutes due to pain. He also said he is unable to lift more than 20 pounds due to his left shoulder pain. On April 27, 2011, Mr. Starks went to the emergency room complaining of pain in his neck and he was diagnosed with cervical strain. At a follow up appointment on April 28, 2011, Mr. Starks described the pain in his neck and left shoulder as constant, worsening, sharp, throbbing, and at a severity level of eight on a scale of one to ten. He noted that the pain is aggravated by movement, walking and pressure, and is relieved by heat and prescription pain medication. However, the physician noted Mr. Starks had normal range of motion in his left shoulder.

In Dr. Rogers' letter to the SSA dated October 18, 2011, she noted that Mr. Starks had chronic neck pain due to degenerative arthritis with radicular symptoms in the left arm. She stated that the causes of his neck pain and left arm symptoms are consistent with findings from the October 7, 2010 x-ray. Mr. Starks had participated in at least eight sessions of physical therapy, but had not noted any improvement in his pain levels.

## II. DISABILITY AND STANDARD OF REVIEW

Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous work, but any other kind of gainful employment which exists in the national economy, considering his age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity, he is not disabled, despite his medical condition and other factors. 20 C.F.R. § 416.920(a)(4)(i). At step two, if the claimant does not have a "severe" impairment (i.e., one that significantly limits his ability to perform basic work activities) that meets the durational requirement, he is not disabled. 20 C.F.R. § 416.920(a)(4)(ii). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, and whether the impairment meets the twelve month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 416.920(a)(4)(iii). In order to determine steps four and five, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"), which is the "maximum that a claimant can still do despite [her] mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675-76 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(1); SSR 96-8p). At step four, if the claimant is able to perform his past relevant work, he is not disabled. 20 C.F.R. § 416.920(a)(4)(iv). At step five, if

the claimant can perform any other work in the national economy, he is not disabled. 20 C.F.R. § 416.920(a)(4)(v).

In reviewing the ALJ's decision, this Court must uphold the ALJ's findings of fact if the findings are supported by substantial evidence and no error of law occurred. *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Further, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). While the Court reviews the ALJ's decision deferentially, the Court cannot uphold an ALJ's decision if the decision "fails to mention highly pertinent evidence, . . . or that because of contradictions or missing premises fails to build a logical bridge between the facts of the case and the outcome." *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010) (citations omitted).

The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). The ALJ is required to articulate only a minimal, but legitimate, justification for his acceptance or rejection of specific evidence of disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004).

### III. THE ALJ'S DECISION

As an initial matter, the ALJ found that Mr. Starks meets the insured status requirements of the Act through June 30, 2011, for purposes of DIB. At step one, the ALJ found that Mr. Starks had not engaged in substantial gainful activity since April 1, 2005, the alleged onset date. He concluded that Mr. Starks' part-time work as an elder caregiver in 2009 and 2010 was not at the

7

substantial activity level. At step two, the ALJ found that Mr. Starks had the following severe impairments: cervical spine degenerative disc disease with left arm radiculopathy; affective disorder, anxiety disorder, personality disorder, and substance abuse/dependence disorder. At step three, the ALJ found that Mr. Starks does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ concluded that Mr. Starks has the RFC to perform light work, except he is able to reach with his left arm and shoulder frequently; he is able to perform simple repetitive tasks; he must avoid contact with the public; and he is able to have contact with supervisors and coworkers but at a frequency just below occasional. He has no limitation in his right hand or arm. At step four, the ALJ determined that Mr. Starks is unable to perform any of his past relevant work. At step five, the ALJ found that considering Mr. Starks' age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that he can perform, thus concluding that he is not disabled as defined in the Act.

## IV. __ANALYSIS__

Mr. Starks argues that the ALJ committed reversible error with respect to two issues. First, he argues that the ALJ failed to address the requirements of Social Security Ruling ("SSR") 85-15 and the effects of stress in the workplace in assessing Mr. Starks' RFC. Second, he argues that the ALJ failed to address critical evidence with respect to his left arm weakness supporting a more restrictive RFC. The Commissioner argues that the ALJ supported his RFC finding with substantial evidence.

**A.    Consideration of the effect of stress in the workplace.**

Mr. Starks alleges that the ALJ failed to address his ability, or lack thereof, to cope with stress in the workplace. SSR 85-15 requires that any impairment-related limitations created by an

individual's response to demands of work must be reflected in the RFC assessment. "Because response to the demands of work is highly individualized, the skill level of a position is not necessarily related to the difficulty an individual will have in meeting the demands of the job." SSR 85-15. It is not enough for an ALJ to simply state that the claimant is limited to "low stress work;" rather, "SSR 85–15 requires an ALJ to undertake a subjective, individualized inquiry into what job attributes are likely to produce disabling stress in the claimant, and what, if any, jobs exist in the economy that do not possess those attributes." *Felver v. Barnhart*, 243 F. Supp. 2d 895, 906 (N.D. Ind. 2003); *see also Clifford v. Apfel*, 227 F.3d 863, 868 n.2 (7th Cir. 2000) ("[t]he use of the term 'low stress' is somewhat of a misnomer because stress lies in the individual not in the job.").

Mr. Starks alleges that the ALJ did not give explanation as to why "the other restrictions were ignored or left out of the RFC," and does not address "critical testimonial evidence;" however, he fails to identify what restrictions and testimony he is referring to, or how this evidence would impact the RFC. Instead, he cites to case law that simply states that the ALJ is required to acknowledge potentially dispositive evidence, and must sufficiently articulate his assessment of the evidence. The Court finds that this is a "skeletal argument" because Mr. Starks provides no explanation as to which evidence contradicts the ALJ's conclusion or how this unknown evidence would have merited a different outcome. *See United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("A skeletal 'argument,' really nothing more than an assertion, does not preserve a claim."); *Morris v. Astrue*, No. 3:12-CV-538-TLS, 2014 WL 1259958 (N.D. Ind. Mar. 26, 2014) (citing *Dunkel*).

However, the Court finds that the ALJ did satisfy the requirements of SSR 85-15 by considering the job attributes were likely to produce stress in Mr. Starks, and properly incorporated

these considerations into the RFC. The ALJ stated that Mr. Starks "is capable of at least simple work with the social limitations noted in the . . . residual functional capacity." Filing No. 9-3, at ECF p. 55. He noted in several places in his opinion that Mr. Starks' primary mental limitation is his inability to deal with people, citing to the medical records and Mr. Starks' testimony at the hearing. Filing No. 9-3, at ECF pp. 54-55. The ALJ cited to Dr. Sanchez's opinion, which specifically stated that Mr. Starks "has marked difficulty with coworker interaction, public interaction, and workplace tolerance." Filing No. 9-3, at ECF p. 56. The RFC assessment includes "significant social limitations" that address Mr. Starks' difficulty interacting with people, in addition to the "light work" skill level limitation. The Court finds that this adequately considers the aspects of work that would cause Mr. Starks' disabling stress, and sufficiently adjusted the RFC to accommodate those stressors.

**B.    Consideration of physical limitations due to left arm pain.**

Mr. Starks also argues that the ALJ did not offer an explanation or justification for the specific limitation of reaching with his left arm in the RFC assessment, and completely ignored objectively tested weakness in Mr. Starks' left arm. The ALJ found that the record evidence showed that Mr. Starks could perform light level work, which requires lifting no more than 20 pounds occasionally. He cited to the fact that the radiological report suggests that Mr. Starks' neck impairment is "mostly mild" and his "daily activities involve tasks that show he has the ability to lift at least 20 pounds, walk, stand, use his arms, adapt to different environments, and engage in postural movements." Filing No. 9-3, ae ECF p. 55 (citing Filing No. 9-7, at ECF p. 85; Filing No. 9-6, at ECF p. 28). In addition, the ALJ mentioned that he gave Dr. Dees' opinion significant weight, wherein Dr. Dees reports that Mr. Starks stated that he is "unable to lift more than 20 lbs. due to left shoulder pain." Filing No. 9-8, at ECF p. 35. Being able to lift 20 pounds is consistent

with being able to perform light level work. See 20 C.F.R. §§ 404.1567(b), 416.967(b) ("Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."). Again, Mr. Starks does not explain how consideration of test results showing his grip strength and left hand weakness would change the ALJ's RFC assessment, nor how it relates to reaching limitations. The ALJ is not required to evaluate in writing every piece of evidence submitted, and courts require only that the ALJ sufficiently articulate his assessment of the relevant and important evidence. *Carlson*, 999 F.2d at 181.

The Court finds that the ALJ sufficiently supported his RFC assessment with citations to objective medical evidence and Mr. Starks' own assessment of his physical limitations, and did not fail to consider evidence that was contrary to his conclusion. Therefore, the Court concludes that the ALJ did not commit reversible error in his RFC assessment.

## V. CONCLUSION

For the reasons set forth above, the Court concludes that the ALJ did not commit reversible error; thus the decision of the Commissioner is **AFFIRMED**.

**SO ORDERED.**

Date: 9/30/2014

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Charles D. Hankey
charleshankey@hankeylawoffice.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov

11